UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Todd Smith-Bunge,

        Plaintiff,

           **MEMORANDUM OPINION**
v.                 **AND ORDER**
           Civil No. 13-2736 ADM/LIB

Wisconsin Central, Ltd.,

        Defendant.

_____

Jeff R. Dingwall, Esq., Law Office of Jeff R. Dingwall PLC, San Diego, CA and James Lavoie, Esq., Lindell & Lavoie, Minneapolis, MN for Plaintiff.

Holly M. Robbins, Esq., Littler Mendelson, PC, Minneapolis, MN for Defendant.

_____

## I. INTRODUCTION

On August 27, 2014, the undersigned United States District Judge heard oral argument on Plaintiff Todd Smith-Bunge's ("Smith") Motion for Partial Summary Judgment [Docket No. 23] and Defendant Wisconsin Central Ltd.'s ("Central") Motion for Summary Judgment [Docket No. 45]. For the reasons discussed below, Plaintiff's motion is granted and Defendant's motion is denied.

## II. BACKGROUND

Central is a rail carrier. Since Smith began working for Central in 2008, he has worked in a number of positions, including welder, night crew foreman and mobile mechanic. Smith Dep. [Docket No. 27] Attach. 2 at 15-22, 50 (filed under seal).

In 2012, Central disciplined Smith with a 15-day suspension without pay for failure to report a low-back injury on the same day it occurred, as required by Central's injury reporting rules. Smith initially believed that his 2012 back pain was caused by an aggravated 2009 back

injury. Because Smith did not know until after an MRI was complete that his 2012 back pain constituted a new injury, Smith argues that Central's discipline of him for filling out an injury report—six days after the 2012 incident and at Central's request—violated his rights under the Federal Rail and Safety Act (FRSA).

## A. The Federal Rail and Safety Act

The FRSA aims to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA was amended by Congress in 2007 to broaden protection for railroad workers by including anti-retaliation measures. Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 156 (3d Cir. 2013). The FRSA now prohibits railroad employers from discriminating against employees who report work-related injuries. 49 U.S.C. § 20109(a)(4). Specifically, the statute states that an employer:

"may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done . . ." to, among other things, report or attempt to report a work-place injury. Id.

## B. Central's Injury Reporting Policy

Central established internal injury reporting rules to promote employee safety and to ensure Central's compliance with reporting obligations required by the Federal Railroad Administration (FRA). Def.'s Mem. Supp. Summ. J. [Docket No. 47] 3-4 (citing 49 U.S.C. § 20901; 49 CFR 225.1, 225.5, 225.11 and 225.19). The primary rule promulgated by Central and at issue in this case is United States Operating Rule ("USOR") D, which states:

> Employees must report promptly to the proper authority any injury sustained
> on duty or on company property. Notification of the injury must be made

prior to the end of the employee's tour of duty and before leaving company
property.

Weinstein Aff. [Docket No. 48] Ex. D.  Smith and other Central employees receive classroom

training and testing on the USORs every two years.  Def.'s Mem. Supp. Summ. J. at 3.

Central defines a report as a "notification to the proper authority" and "injury" as "any injury

or suspected injury that is incurred on duty or on company property."  Interrog. Ans. No. 10

[Docket No. 27] Attach. 15 at 8.  A report must be made of all new injuries and any "significant

aggravation of a preexisting condition . . . ."  Central's Reporting Guide [Docket No. 27] Attach.

22 (filed under seal).  A preexisting condition is significantly aggravated and reportable under

the FRA if it requires the employee to take one or more days away from work or change medical

treatment necessitated by the workplace event or exposure.  Id.

**C.  Smith's 2009 Injury**

Smith suffered his first work-related injury in 2009, when he slipped on taconite pellets and

injured his low back.  Def.'s Mem. Supp. Summ. J. at 11, n. 3.[1]  Despite medical treatment,

physical therapy and pain medications, Smith continued to experience recurrent low-back pain.

Smith Med. Rec. [Docket No. 27] Attach. 4 (filed under seal).  Smith managed the recurrent pain

with exercises recommended by his doctor and prescription pain medication.  Id.

Smith reported his 2009 injury the day after it occurred.  Smith explained, "I just thought I'd

pulled my back.  It wasn't until the next morning that I realized that I injured it when I went to

the doctor."  Smith Dep. 45:18-25.  Because Central's internal policies require employees to

---

[1] Taconite pellets are marble-sized rocks that fall off of train cars due to overloading
during transport.  Pl.'s Mem. Supp. Summ. J. [Docket No. 25] 5, n.3; Ernst Dep. [Docket No. 27]
Attach. 1 at 23: 23-25.

report injuries "promptly . . . , prior to the end of the employee's tour of duty and before leaving

company property," Smith was disciplined with a five-day suspension for failure to comply with

USOR D.  Id.[2]

### D.  Smith's 2012 Injury

Smith suffered his second work-related injury on Wednesday, August 22, 2012.  Similar to

Smith's 2009 injury, he again slipped on taconite pellets and felt a sharp pain in his low back.

Id. at 97-99.  Smith believed that he had aggravated his 2009 injury. Id. at 22:25; 23:1-25; 24:1-

10.  Before leaving work that day, Smith told his supervisor that his back was stiff and sore.

Ernst Dep. at 8:16-25.  That evening, Smith took his prescription pain medication and he

returned to work the next day.  Plagued by ongoing pain, Smith took a vacation day on the

following day (Friday, August 24, 2012), hoping that after three days of rest he would be able to

return to work.  On Monday, Smith was still experiencing considerable pain, so he took another

vacation day.  The next day (Tuesday, August 28, 2012), Smith went to work.  However, at the

end of the day, Smith called his supervisor, Mickey Ernst, to inform him that he would need to

find a replacement mechanic for Wednesday because Smith needed to see his doctor about his

ongoing back pain.

Later, an MRI was ordered and revealed a new injury in Smith's low back. See Smith Dep.

23:14-25.  He was ordered by his doctor to be off work for approximately one year.  Id.

### E.  Central's Response to Smith's 2012 Injury

When Smith called Ernst on August 28, 2012, Ernst inquired about the origin of Smith's low-

back pain.  Id. at 10:11-16.  Smith explained that he had slipped on some pellets a few days prior

---

[2] Ultimately, Smith was not required to serve the five-day suspension.  Smith Dep. 46:1-3; Def. Mem. Supp. Summ. J. at 11.

and felt a twinge in his back.  Id. 18-24.  Smith also told Ernst that as he continued to perform

other tasks throughout the day, his back pain increased.  Id.  Based on the information shared by

Smith, Ernst believed Smith's back pain was the result of a work-related injury that occurred six

days earlier, on August 22, 2012.  Id. at 11.  Ernst, having only been on the job for a few months,

called his supervisor, Brent Burton, to inquire about how to proceed.  Id. at 12.  On Wednesday,

August 29, 2012, Ernst, Smith and Central's local risk mitigation officer, Lance Hunt, met to

discuss the incident, review the scene where the incident occurred and have Smith fill out the

appropriate injury reporting paperwork.  Id.  at 21-24.

   Central issued a Notice of Investigation on September 14, 2012.  Id. at 37.  Pursuant to

Central's collective bargaining agreement with Smith's Union, a hearing was scheduled to gather

facts and determine if Smith violated any of Central's rules by not reporting a new injury on

August 22, 2012.  Id.  Prior to the hearing, Ernst and his supervisor concluded that the

appropriate discipline for Smith's alleged violated of USOR D was a 15-day suspension and a

15-day deferred suspension.  Id. at 70-71.[3]  The hearing took place on October 2, 2012 and

Central ultimately concluded that Smith violated USOR D.  The recommended discipline was

imposed.  Id.

   As ordered by his doctor, Smith was on medical leave for nearly one year after the August

22, 2012 incident.  Smith Dep. at 35.  Once released to return to work, Smith served his 15-day

unpaid suspension.  When Smith returned to work, he was placed on the "Focus List" for at-risk

behavior of late reporting of injuries.  Ernst Dep. 57:25.

---

   [3] Deferred suspensions are triggered when an employee has another disciplinary
infraction within one year of returning to work.

**F.  Procedural History of Present Action**

In February 2013, Smith filed a complaint with the United States Department of Labor,

Occupational Safety and Health Administration (OSHA), alleging violation of his rights under

the FRSA, 49 U.S.C. § 20109.  Because a final decision was not issued within 210 days, Smith

brought this suit in October 2013.  See 49 U.S.C. § 20109 (d)(3) (permitting employee to bring

action for de novo review in appropriate district court if Secretary of Labor has not issued final

decision within 210 days after filing complaint with OSHA).  Smith seeks expungement of the

2012 disciplinary actions, back pay with interest and other damages permitted under the FRSA.

Compl. [Docket No. 1] 5.

### III.  DISCUSSION

**A.  Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure states a court shall grant summary

judgment if no genuine issue of material fact exists and the moving party is entitled to judgment

as a matter of law.  "While a party moving for summary judgment has the burden of showing

that there is no genuine issue of fact for trial, a nonmoving party seeking to avoid having

summary judgment entered against it may not rest on mere allegations or denials, but must set

forth specific facts sufficient to raise a genuine material issue for trial."  Thomas v. Runyon, 108

F.3d 957, 959 (8th Cir. 1997).

A fact dispute is "material," and will thus preclude summary judgment, only if the dispute

"might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  And where the moving party has carried its burden, the

nonmoving party must then "do more than simply show that there is some metaphysical doubt as

to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).  The "very mission of the summary judgment procedure is to pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for trial."  Fed. R. Civ. P. 56(e)

advisory committee's note to 1963 Amendment.

**B.  Smith's prima facie case**

Smith argues that he has established a prima facie case of retaliation for his reporting of a

work-related injury six days after the events that triggered his back pain.  Pl.'s Mem. Supp.

Summ. J. at 15.  Central maintains that Smith cannot meet his burden under the FRSA because

he did not engage in statutorily protected activity and cannot show a causal connection between

his injury report and the 15-day suspension.  Def.'s Mem. Supp. Summ. J. at 13.  Central also

claims that it can prove it "would have disciplined [Smith] in the absence of an injury report."

Id.

The FRSA incorporates by reference the burden-shifting framework set forth in the Wendell

H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21").  49 U.S.C. §

20109(d)(2)(A); Araujo, 708 F.3d at 156 ("Unquestionably, AIR-21 burden-shifting applies to

cases brought under the FRSA.").  To state a prima facie case of retaliation under the FRSA, a

plaintiff must establish by a preponderance of the evidence that (1) he engaged in protected

activity; (2) the railroad employer knew or suspected—actually or constructively—that he

engaged in protected activity; (3) he suffered an adverse action; and (4) the protected activity

was a contributing factor in the adverse action.  Id.  After a prima facie case is established, the

railroad is liable unless it can prove by clear and convincing evidence that it would have taken

the same adverse action in the absence of the protected activity.  Id.

**1.  Smith engaged in protected activity**

Smith argues he engaged in the protected activity of reporting an injury that he, in good faith,

believed was work related on August 28, 2012. Pl.'s Mem. Supp. Summ. J. at 16. Central

contends that Smith cannot show he engaged in protected activity because he did not report the

August 22, 2012 injury on his own accord. Central further argues that Smith "did not genuinely

believe that he had incurred a new injury nor was he making a 'report' of such injury." Def.'s

Mem. Supp. Summ. J. at 14.

The FRSA protects employee's good faith acts to report or attempt to report injuries incurred

on the job. It also protects such good faith acts that are "perceived by the employer to have been

done or about to be done." 49 U.S.C. § 20109(a)(4). "It is worth emphasizing that the AIR-21

burden-shifting framework that is applicable to FRSA cases is much easier for a plaintiff to

satisfy than the McDonnell Douglas standard." Araujo, 708 F.3d at 158.

In this case, the parties do not dispute that Smith called Ernst on August 28, 2012 to inform

him that he was suffering from back pain and needed to see his doctor the following day. Nor

do the parties dispute that Smith filled out the appropriate injury reporting forms on August 29,

2012. There is no evidence to refute that Smith consistently perceived his August 22, 2012

injury as an aggravation of his 2009 injury until MRI results confirmed he had a new injury. As

stated by Smith at his deposition:

> I thought I aggravated an old injury. [ ] And I was following the medical orders of
> my doctor at that time. And when it did not get better [sic] I called Mickey and told
> him I was going to have to go see the doctor, to let him know in case he needed to
> replace me as a mechanic that day. And that's when they said they wanted me to
> come in and fill out the accident report or injury report. And at that time, I still
> thought it was just [an] aggravation of the old [injury]. And it wasn't until I went in
> and seen my family doctor and they did the MRI, that they found out [my] back was
> injured.

See Smith Dep. 23:14-25. The documentary evidence demonstrates that Smith believed he

aggravated an old injury because the pain he experienced in 2012 was similar to the low back he

experienced in 2009.  Smith Med. Rec. (noting that Dr. Quenemoen told Smith he "was just

going to have to live with [his back pain]" and that Smith had "some flare-ups, which he

generally manages to work through.").  As such, no reasonable juror could conclude that Smith

acted in bad faith by following his doctor's directive to manage his pain with medication and

rest.  Notably, the FRSA does not require that reported injuries be "new"; nor does the FRSA

require employees follow any particular reporting regime.  The FRSA only requires the

employee act in good faith to inform his or her employer of a work-related injury.  By calling his

supervisor on August 28, 2012 to inform him that he was suffering from low-back pain and

needed to see his doctor the following day, Smith acted in good faith to report a work-related

injury.

No evidence in the record supports Central's allegation that Smith was deliberately

"attempting to avoid his obligation to report an injury."  Def.'s Mem. Supp. Summ. J. at 16.  To

this end, the facts of this case are distinguishable from cases discussing the "good faith"

requirement in relation to an employee alleged to have been dishonest about whether his injury

occurred at work.  See Davis v. Union Pac. R.R. Co., Case No. 12-2738, 2014 LEXIS 101708,

*18 (W.D. La. July 14, 2014) ("Thus, when a plaintiff brings a claim under the FRSA alleging

he was retaliated against for reporting a work-related injury, both Griebel and Ray require that

the plaintiff actually believed, at the time he reported the injury, that it was work-related.")

(citing Griebel v. Union Pac. R.R. Co., No. 2011-FRS-11 (A.L.J. Jan. 31, 2013) and Ray v.

Union Pac. R.R. Co., 971 F. Supp. 2d 869 (S.D. Iowa 2013)).  There is no genuine dispute about

whether Smith believed he incurred his 2012 injury at work; he merely believed that he may

have aggravated his 2009 back injury rather than having sustained a new back injury.

For all of these reasons, Smith engaged in protected activity under the FRSA.

**2. Central knew that Smith engaged in protected activity**

Smith's phone call to his supervisor on August 28, 2012 alerted Ernst, Burton, and Hunt that Smith had suffered a work-related injury. Their decision to have Smith fill out the injury reporting forms is consistent with Central's reporting policies and demonstrates that Central was aware Smith suffered a work-related injury.

**3. Smith's protected activity contributed to the adverse action**

Central does not dispute that the 15-day suspension without pay levied against Smith was an adverse action. However, Central contends that Smith cannot establish a link between his report of the injury and the adverse action because Smith was disciplined for making an untimely report of his injury, not for reporting the injury itself.

In a 2012 internal memorandum, the Deputy Assistant Secretary of Labor recognized that cases where employees who are disciplined for violating employer injury reporting rules deserve "careful scrutiny." Weinstein Aff., Ex. C.

> Because the act of reporting the injury directly results in discipline, there is a clear potential for violating section 11(c) or FRSA. OSHA recognizes that employers have a legitimate interest in establishing procedures for receiving and responding to reports of injuries. To be consistent with the statute, however, such procedures must be reasonable and may not unduly burden the employee's right and ability to report. For example, the rules cannot penalize workers who do not realize immediately that their injuries are serious enough to report, or even that they are injured at all. [ ] In investigating such cases, factors such as the following may be considered: whether the employees' deviation from the procedure was minor or extensive, inadvertent or deliberate, whether the employee had a reasonable basis for acting as he or she did, whether the employer can show a substantial interest in the rule and its enforcement, and whether the discipline imposed appears disproportionate to the asserted interest.

Id. The considerations highlighted in the Labor Department memoradum are instructive and will be considered here. First, Smith's deviation from Central's reporting rule was minor. Smith reported his injury less than one week after it occurred. Additionally, Smith had a reasonable

basis for not reporting his injury immediately because the pain he experienced was in the same location as his 2009 injury. Moreover, Smith had successfully managed recurrent pain since his 2009 injury.

Central argues it has a substantial interest in enforcing its injury reporting policy in this case because the policy is intended to protect the safety of all workers and is necessary for it to comply with its reporting obligations under the FRA. It is undeniable that in many work-place injury circumstances, prompt reporting of the injury ensures the safety of all workers. However, this case demonstrates how enforcement of Central's 24-hour reporting policy, regardless of the circumstances, can encourage under-reporting of injuries and thereby decrease worker safety.

As a general matter, railroad work is physically strenuous and feeling stiff and sore is common among railroad workers. In this context, it is not unreasonable to expect that a worker may not appreciate a new injury, or the extent of an initial injury, until several days pass. This is particularly true where the injury suffered is a more subtle muscular or internal injury, as opposed to a more obvious injury like an open wound or broken bone.[4] If a worker who suffers a subtle injury knows that reporting the injury after 24 hours will result in disciplinary action, including the possibility of an unpaid suspension, his or her incentive to report the injury is chilled. This result is contrary to the safety that Central aims to promote by its "prompt" reporting policy, and it is also in direct conflict with the purpose and goals of the FRSA. Davis, 2014 LEXIS 101708 at *18 ("The FRSA is intended to be protective of employees.") (citing Araugo, 708 F.3d at 158).

---

[4] Nothing in this opinion should be construed as a critique of employer injury reporting policies that require prompt reporting of obvious injuries that result in readily ascertainable physical damage to a person.

Finally, Central's need to report worker injuries does not justify its 24-hour reporting rule for all types of injuries because Central is only required to report injuries every 30 days and it is also able to submit amendments to its regular report.  See 49 C.F.R. §§ 225.11, 225.13.  For all of these reasons, Central's decision to discipline Smith for untimely reporting of his 2012 injury constitutes a violation of the FRSA.  See Tagliatela v. Metro-North Commuter R.R. Co., Case No. 10-1755, 2012 U.S. Dist. LEXIS 161835, *7 (Conn. Nov. 13, 2012) (noting OSHA's conclusion that employee established a prima facie case under the FRSA where employer levied a 5-day suspension against employee for failing to "promptly" report his injury).

For all of these reasons, no reasonable juror could conclude that Smith's injury report was not a contributing factor to Central's 15-day disciplinary suspension levied against him.  Araujo, 708 F.3d at 158 (noting that a contributing factor is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision."); see also Kuduk v. BNSF RR Co., Case No. 13-3326 *8, (8th Cir. Oct. 7, 2014) (renumbered from Case No. 12-276) (holding that "the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity.").

### 4. Central cannot show that it would have levied the same adverse action absent an injury report

Central argues that it would have disciplined Smith in the same manner even if he did not call his supervisor on August 28, 2012 to report his injury.  Specifically, Central contends that it "certainly would have learned of Smith-Bunge's August 2012 injury and failure to timely report absent a protected report given he began a one-year leave of absence less than one week after incurring his August 2012 injury."  Smith maintains that the report of his injury, whether after six days or even later, prompted Central to take adverse action against him.

No reasonable juror could conclude that Central would have disciplined Smith absent a late report of his injury. Central fails to explain why an even later report by Smith to Central about his injury (i.e. after Smith was informed that he would need to be on medical leave for one year) would not be considered a protected activity under the FRSA. Thus, Central has not set forth evidence showing, by clear and convincing evidence, that it would have disciplined Smith in the same manner absent his reporting of a work-related injury.

### IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Todd Smith-Bunge's Motion for Partial Summary Judgment [Docket No. 23] is **GRANTED**;

2. Defendant Wisconsin Central's Motion for Summary Judgment [Docket No. 45] is **DENIED**; and

3. Because the sole remaining issue in this case is the amount of Plaintiff Todd Smith-Bunge's damages, the parties are required to schedule a settlement conference before Magistrate Judge Brisbois. The damages in this case are quantifiable and likely subject to resolution by the parties. In the event the case does not settle, a trial date will be scheduled.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 8, 2014.